1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MATTHEW CHILDERS,

                    Plaintiff,

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                    Defendant.

3:18-cv-00170-RCJ-CBC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Childers' application for social security income benefits pursuant to titles XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383. Currently pending before the Court is Childers' motion for remand. (ECF No. 12.) In this motion, Childers seeks the reversal of the administrative decision and remand for an award of benefits. (*Id.*) The Commissioner filed a response to Childers' motion and a cross-motion to affirm. (ECF Nos. 19, 20.) Childers filed a reply (ECF Nos. 21, 22) reiterating the arguments in his motion for remand.  For the reasons set forth herein, the Court recommends that Childers' motion for remand, (ECF No. 12), be granted, and the Commissioner's cross-motion to affirm, (ECF Nos. 19, 20), be denied.

**I.    STANDARDS OF REVIEW**

    A.    Judicial Standard of Review

This Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,

---

[1]    This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

1    irrespective of the amount in controversy, may obtain a review of such decision by a civil

2    action ... brought in the district court of the United States for the judicial district in which

3    the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record,

4    a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

5    Security, with or without remanding the cause for a rehearing." *Id.*

6        The Court must affirm an Administrative Law Judge's ("ALJ") determination if it is

7    based on proper legal standards and the findings are supported by substantial evidence

8    in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006);

9    *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any

10    fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is

11    more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d

12    1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means

13    such relevant evidence as a reasonable mind might accept as adequate to support a

14    conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842

15    (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83

16    L.Ed. 126 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

17        To determine whether substantial evidence exists, the Court must look at the

18    administrative record as a whole, weighing both the evidence that supports and

19    undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995)

20    (citation omitted). Under the substantial evidence test, a court must uphold the

21    Commissioner's findings if they are supported by inferences reasonably drawn from the

22    record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003).

23    "However, if evidence is susceptible of more than one rational interpretation, the decision

24    of the ALJ must be upheld." *Shalala,* 50 F.3d at 749 (citation omitted). The ALJ alone is

25    responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172

26    F.3d 1111, 1113 (9th Cir. 1999).

27        It is incumbent on the ALJ to make specific findings so that the court does not

28    speculate as to the basis of the findings when determining if substantial evidence supports

2

1    the Commissioner's decision. The ALJ's findings should be as comprehensive and

2    analytical as feasible and, where appropriate, should include a statement of subordinate

3    factual foundations on which the ultimate factual conclusions are based, so that a

4    reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d

5    1197, 1200 (9th Cir. 1990).

6               B.    Standards Applicable to Disability Evaluation Process

7         The individual seeking disability benefits bears the initial burden of proving

8    disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the

9    individual must demonstrate the "inability to engage in any substantial gainful activity by

10   reason of any medically determinable physical or mental impairment which can be

11   expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. §

12   423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in

13   support of his claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes

14   an inability to perform his prior work, then the burden shifts to the Commissioner to show

15   that the individual can perform other substantial gainful work that exists in the national

16   economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

17        The first step requires the ALJ to determine whether the individual is currently

18   engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b).

19   SGA is defined as work activity that is both substantial and gainful; it involves doing

20   significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-

21   (b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not

22   disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to

23   the second step.

24        The second step addresses whether the individual has a medically determinable

25   impairment that is severe or a combination of impairments that significantly limits him from

26   performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or

27   combination of impairments is not severe when medical and other evidence establish only

28   a slight abnormality or a combination of slight abnormalities that would have no more than

a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p.1 If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four in order to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If he is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.     CASE BACKGROUND**

A.     Procedural History

On February 25, 2016, Childers protectively filed for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, alleging a disability onset date of June 4, 1997. (Administrative Record ("AR") 173.)[2] The Social Security Administration initially denied Childers' application on May 3, 2016, and upon reconsideration on July 26,

_____

[2]    On May 31, 2017, Childers amended his onset date to February 25, 2016. (AR 278.)

1   2016.  (AR 60-74, 76-93.)  Childers subsequently requested an administrative hearing.
2   (AR 111.)

3        On June 14, 2017, Childers and his attorney appeared at a hearing before an
4   Administrative Law Judge.  (AR 15.)  Scott K. Nielson Jr., a vocational expert ("VE"), also
5   appeared at the hearing.  (*Id.*)  The ALJ issued a written decision on November 7, 2017,
6   finding that Childers was not disabled because he could perform work existing in
7   significant numbers.  (AR 15-26.)  Childers appealed, and the Appeals Council denied
8   review on March 1, 2018.  (*Id.* at 1-6.)  Accordingly, the ALJ's decision became the final
9   decision of the Commissioner.  Having exhausted all administrative remedies, Childers
10  filed a complaint for judicial review on April 24, 2018.  (ECF No. 1.)

11       B.    ALJ's Decision

12       In the written decision, the ALJ followed the five-step sequential evaluation process
13  set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 15-36.) Ultimately, the ALJ disagreed
14  that Childers has been disabled from February 25, 2016, through the present date. (*Id.* at
15  25.) The ALJ held that, based on Childers' RFC, his age, education and work experience,
16  he was able to perform past work and there were jobs in the national economy that he
17  could perform. (*Id.* at 24-25.)

18       In making this determination, the ALJ started at step one. Here, the ALJ found that
19  Childers had not engaged in substantial gainful activity from the alleged onset date of
20  February 25, 2016, through present. (*Id.* at 17.) At step two, the ALJ found that Childers
21  had the following severe impairments: major depressive disorder, recurrent, moderate with
22  anxious distress with obsessive-compulsive, posttraumatic and social phobic features with
23  roots in attention deficit hyperactivity disorder ("ADHD") and lumbar degenerative disc
24  disease per 20 C.F.R. § 416.920(c). (*Id.*) At step three, the ALJ found that Childers did not
25  have an impairment or combination of impairments that either met or medically equaled
26  the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20
27  C.F.R. §§ 416.920(d), 416.925, and 416.926. (*Id.* at 17-19.) Next, the ALJ then determined
28  Childers' RFC. The ALJ determined that Childers had an RFC to perform less than the full

6

1    range of light work, as defined by 20 C.F.R. § 416.967(b), which required Childers avoid

2    all contact with the general public and only occasional exposure to coworkers. (*Id.* at 19.)

3    According to the ALJ's RFC determination, Childers was capable of "perform[ing] simple,

4    repetitive tasks and make simple work related decision[s]." (*Id.*)  However, he should

5    "never climb stairs, ramps, ladders, or scaffolds; [or] [sic] balance," and he can only

6    "occasionally stoop, kneel, crouch, and crawl." (*Id.*)  Additionally, he "must avoid all

7    unprotected heights." (*Id.*)

8        Based on this RFC determination, the ALJ determined Childers was capable of

9    performing light work. (*Id.* at 25.) In addition, the ALJ found Childers not disabled and

10   denied his application for a period of disability and supplemental security income benefits.

11   (*Id.* at 25-26.)

12   **III.    DISCUSSION**

13       There are three issues raised on appeal: (1) whether the ALJ properly determined

14   the RFC; (2) whether the ALJ properly weighed the medical evidence; and, (3) whether

15   the ALJ properly discounted Childers' subjective testimony. (ECF No. 12.)  The Court will

16   address each issue in turn.

17       A.    Residual Functional Capacity

18       First, Childers' argues the ALJ's decision that he can do light work is not supported

19   by substantial evidence because the record shows he needs a cane to ambulate, and light

20   work requires the ability to stand or walk during most of the workday. (ECF No. 12 at 12-

21   13.)  In contrast, the Commissioner argues that the ALJ properly determined the RFC of

22   light work. (ECF No. 19 at 2-4.)  Furthermore, the Commissioner argues whether the use

23   of a cane generally precludes light work activity is wholly immaterial, because the ALJ

24   identified specific light jobs consistent with the RFC, and the VE specifically explained why

25   the identified jobs were still performable notwithstanding the use of a cane. (*Id.*)

26       Childers' argument about his need to use a cane are unconvincing.  First, Dr.

27   Corson's report of August 24, 2017 is consistent with the ALJ's finding that Childers is

28   capable of light work even though it mentions that Childers needs the assistance of a cane

1   to ambulate.  (AR 22-26, 584-588.)  The report states that Childers can sit, stand, and

2   walk for eight hours during an eight-hour workday as long as he alternates; lift and carry

3   eleven (11) to twenty (20) pounds occasionally, and frequently lift ten (10) pounds; use his

4   hands for repetitive actions, such as grasping, pushing, pulling, and fine manipulation;

5   stoop, kneel, crouch, and crawl occasionally; and that he has no limitations to moving

6   mechanical parts, operating a motor vehicle and humidity, chemicals, dust and fumes,

7   pulmonary irritants, extremes of temperature, and vibrations or noises.  (AR 584-588.)

8          Second, and most importantly, the ALJ did consider the fact that Childers' needed

9   a cane to ambulate.  (AR 22-26.)  The ALJ presented interrogatories to the VE, specifically

10  asking him to consider a hypothetical individual with Childers' age, education, and RFC,

11  who required a cane for ambulation.  (AR 296-299.)  The VE responded and said, for

12  example, that jobs as marker II, photocopy machine operator, or silver wrapper would be

13  appropriate and these jobs were available in significant numbers nationally.  (AR 302.)

14  Therefore, substantial evidence supports the ALJ's decision that Childers is not disabled

15  and is capable of light work even if he uses a cane.

16         B.     Medical Evidence

17         Next, Childers argues the ALJ's finding that Childers had the RFC to perform light

18  work is not supported by substantial evidence.  (ECF No. 12 at 13-14.)  Specifically, he

19  repeats his argument that he is precluded from light work because he requires a cane for

20  ambulation.[3]  (*Id.* at 13.)  Additionally, he objects to the ALJ giving Dr. Robert Wildman's

21  Mental Status Exam ("MSE") "considerable weight" while affording his Medical Source

22  Statement ("MSS") "little weight."  (*Id.* at 13-14.)  Finally, Childers' argues that the RFC is

23  not supported by "the substantial weight of the evidence."  (*Id.* at 14.)  In contrast, the

24  Commissioner argues the ALJ did not err because he properly resolved ambiguities within

25

26

27  _____

28  [3]     The Court has already addressed this argument in Section A, and, therefore, will
        not address the argument herein.

                                              8

1    the medical record evidence, and he properly considered the conflicting sources and

2    translated Childers' social limitations into Childers' RFC. (ECF No. 19 at 4-5.)

3        1.    Doctor Robert Wildman

4        The weight given to medical opinions depends in part on whether they are proffered

5    by treating, examining, or non-examining professionals. *Holohan v. Massanari*, 246 F.3d

6    1195, 1201-1202 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

7    Generally speaking, a treating physician's opinion carries more weight than an examining

8    physician's opinion, and an examining physician's opinion carries more weight than a non-

9    examining physician's opinion. *Holohan*, 246 F.3d at 1202.

10        To evaluate whether an ALJ properly rejected a medical opinion, in addition to

11    considering its source, the Court considers whether (1) contradictory opinions are in the

12    record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted

13    opinion of a treating or examining medical professional only for "clear and convincing"

14    reasons. *Lester*, 81 F.3d at 830-831. In contrast, a contradicted opinion of a treating or

15    examining professional may be rejected for "specific and legitimate" reasons. *Id.* at 830.

16    The ALJ can "meet this burden by setting out a detailed and thorough summary of the

17    facts and the conflicting clinical evidence, stating his interpretation thereof, and making

18    findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1991) (citation omitted).

19        "The ALJ need not accept the opinion of any physician . . . if that opinion is brief,

20    conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278

21    F.3d 947, 957 (9th Cir. 2002); *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d

22    1190, 1195 (9th Cir. 2004). The ALJ discounted Dr. Wildman's MSS opinion, which

23    consisted primarily of a check-the-box form, because it was conclusory in nature and not

24    well supported by the other medical evidence in the record, including Dr. Wildman's own

25    detailed MSE opinion. (AR 24-25.) In making this determination, the ALJ found that Dr.

26    Wildman's MSS opinion "differs considerably from the doctor's functional assessment

27    statement . . . of moderate limitations and allegations of symptoms modification by the

28    claimant." (AR 24.) Indeed, there existed in the record uncontested opinions from both

Dr. Wildman and other physicians, that were based on clinical findings that contained less severe limitations than those contained in Dr. Wildman's MSS opinion, which the ALJ found more persuasive, as was his prerogative to determine.  (See AR); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  In short, the ALJ's reasoning provided specific and legitimate reasons supported by substantial evidence for disregarding Dr. Wildman's MSS opinion.  Therefore, the ALJ did not err in assigning reduced weight the Dr. Wildman's MSS opinion.

    2.    Review of the Medical Record Evidence

In determining Childers' RFC, the ALJ explained that a review of the entire record led to the conclusion that Childers' physical capacity fell within the light range and Childers was limited to simple, repetitive tasks with limitations such as a cane for ambulation and the need to avoid all contact with the general public and only occasional exposure to coworkers.  (AR 19-26.)  The ALJ first discussed opinions on Childers' mental condition from doctors Araza, Gilson, Drymalski, Wildman, and Corson.  (AR 23-26.)  After reviewing the opinions of Childers' mental condition, the ALJ afforded considerable weight to Dr. Wildman's functional assessment and to Dr. Corson's physical evaluation, which both limited Childers to simple, repetitive tasks.  (*Id.*)

Contrary to Childers' argument, there is substantial evidence in the record to support the ALJ's determination.  An independent review of the record demonstrates reoccurring inconsistencies between reports.  For example, the record indicates: Childers' goes to casinos (AR 41); that he did not attend special education classes (AR 202); he has no problems with personal care (AR 210), and can do laundry, go to the store, handle finances, and make his own food (AR 211-212, 228); that he can regularly lift ten (10) pounds and occasionally lift eleven (11) to twenty (20) pounds (AR 584-588); he regularly reports that his psychiatric medications are helping (AR 373, 397, 419, 422, 425, 457, 460, 463, 466, 469, 472, 493); he reports that the medications for his low back pain are providing between fifty (50) and sixty (60) percent relief (AR 538-542, 558-560), and that the pain is only moderate (AR 519-523, 528-531); that "with the current medication

1   regimen, his pain symptoms are adequately managed" (AR 538-542); and he can

2   understand, remember, and carry out simple and detailed instructions (AR 574-579).  At

3   the same time, the record indicates: Childers stays away from large crowds (AR 41); that

4   he can only pay attention for about one minute and cannot follow instructions (214, 228-

5   231); that he can only lift a gallon of milk (AR 47); that his cognitive impairment has

6   worsened with his medications (AR 446); that he experiences severe agitation which has

7   led him to self-harm at least once (AR 479-483, 496-498); that his low back pain ranges

8   from a six (6) out of ten (10) to an eight (8) out of ten (10) with ten (10) being the worst

9   pain and one (1) being no pain (AR 538, 544, 549, 558, 561).

10         Childers argues for another interpretation of the evidence but does not establish

11   that the ALJ erred in fact or law in analyzing the evidence.  The ALJ, not this Court, is

12   responsible for reviewing the evidence and resolving conflicts or ambiguities.  *Tommasetti*

13   *v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Morgan v. Comm'r of Social Sec. Admin.*,

14   169 F.3d 595, 603 (9th Cir. 1999); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

15   1989).  While another ALJ may have reached a different conclusion, this ALJ's conclusion

16   is supported by substantial evidence.  Where evidence is susceptible to more than one

17   interpretation, the ALJ's conclusion must be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679

18   (9th Cir. 2005).   In determining a claimant's RFC, the ALJ must consider all relevant

19   evidence in the record.  *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

20   An ALJ is not required to adopt any one medical opinion, but instead must translate

21   Childers' limitations into work-related restrictions and functions, as the ALJ did here.  *See*

22   *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-1176 (9th Cir. 2008) (ALJ may properly

23   translate a plaintiff's exertional and non-exertional impairments into an RFC finding).

24         The ALJ is the final arbiter with respect to resolving ambiguities in the medical

25   evidence.  Here, the ALJ properly translated Childers' limitations into the RFC by reviewing

26   the entire record.  For the reasons discussed above, the ALJ's determination that Childers

27   could perform light work as part of developing Childers' RFC was supported by substantial

28   evidence in the record.

1

C.    Childers' Subjective Credibility

2

Finally, Childers contends that, the ALJ did not properly assess his subjective

3

symptom testimony.  (ECF No. 12 at 14-17.)  In doing so, Childers argues that the ALJ's

4

reasons for rejecting Childers' symptom testimony were improper.  (*Id.*)  First, Childers

5

argues that the ALJ failed to state clear and convincing reasons for rejecting Childers'

6

testimony.  (*Id.*)  Second, Childers argues that the ALJ improperly relied on the stability

7

and lack of treatment of Childers' physical and mental health symptoms.  (*Id.* at 15-16.)

8

By contrast, the Commissioner alleges that the ALJ provided valid bases for finding

9

Childers not fully credible.  (ECF No. 19 at 5-8.)  Specifically, the Commissioner highlights

10

the ALJ's discussion of Childers' medication treatment and objective medical evidence.

11

(*Id.*)

12

"In assessing the credibility of a claimant's testimony regarding subjective pain or

13

the intensity of symptoms, an ALJ engages in a two-step analysis." *Molina v. Astrue*, 674

14

F.3d 1104, 1112 (9th Cir. 2012).  First, the ALJ determines whether there is "objective

15

medical evidence of an underlying impairment which could reasonably be expected to

16

produce the pain or other symptoms alleged." *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d

17

586, 691 (9th Cir. 2009)).  If there is such evidence, then the ALJ "may not discredit [the]

18

claimant's testimony of pain and deny disability solely because the degree of pain alleged

19

by the claimant is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947

20

F.2d 341, 346-47 (9th Cir. 1991) (en banc).  Instead, at the second step of the analysis,

21

unless there is affirmative evidence that the claimant is malingering, the ALJ must give

22

"specific, clear and convincing reasons" before discrediting the claimant's testimony.

23

*Molina*, 674 F.3d at 1112 (quoting *Vasquez*, 572 F.3d at 591). To support a finding of less

24

than fully credible, the ALJ is required to point to specific facts in the record that

25

demonstrate that the individual's symptoms are less severe than they claim. *See Vasquez*,

26

572 F.3d at 592 (internal citation omitted).

27

"In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of

28

credibility evidence.'" *Id.* (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224

n.3 (9th Cir. 2010)).  For example, the ALJ may consider the claimant's reputation for truthfulness, prior inconsistent statements, inconsistencies between the claimant's testimony and their conduct, an unexplained or inadequately explained failure to seek treatment, the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms.  *See Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

At step one of the two-step process, the ALJ determined that Childers had a medically determinable impairment that could reasonably be expected to cause some degree of the alleged symptoms.  At step two, the ALJ found that Childers' subjective testimony was not full credible.  Because the record does not contain any affirmative evidence of malingering, the ALJ is required to provide clear and convincing reasons to discredit Childers' testimony.  *See Lingenfelter*, 504 F.3d at 1036.  "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment."  *Astrue,* 495 F.3d at 636.

Despite Childers' allegations to the contrary, the ALJ provided clear and convincing reasons for finding him not fully credible.  The ALJ cited three reasons for partially discrediting Childers' testimony, including: (1) Childers' treatment has been conservative; (2) Childers' symptoms are relatively stable and are being managed by the prescribed treatment; (3) inconsistency with the objective medical evidence.  (AR 22-24.)

1.    Conservative Treatment

The first reason mentioned by the ALJ in rejecting Childers' testimony is that Childers' treatment has been conservative which contrasts with allegations of disabling symptoms and limitations.  (*Id.* at 22.)  Conservative treatment can suggest a lower level of both pain and functional limitation, justifying an adverse credibility determination.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008); *Johnson v. Shalala*, 60

F.3d 1428, 1434 (9th Cir. 1995); *see also Gutierrez v. Commissioner of Social Sec. Admin.*, 2014 U.S. Dist. LEXIS 38060, 2014 WL 1225118, at *5 (D. Or. Mar. 24, 2014), aff'd, 671 Fed. Appx. 526, 2016 U.S. App. LEXIS 22021, 2016 WL 7187397 (9th Cir. Dec. 12, 2016) (clear and convincing reasons to discount claimant's credibility included conservative treatment involving physical therapy, weight loss, and medications).  The ALJ can also infer that a claimant's symptoms are, "not as all-disabling as . . . reported." *Tommasetti*, 533 F.3d at 1039-40 (finding a claimant's favorable response to conservative treatment undermined his "reports regarding the disabling nature of his pain.").  However, "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exists."  *LaPeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010). Conservative treatment "is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)).

Childers asserts symptoms resulting from both underlying physical and mental health impairments.  The Court addresses them separately.

2.    Conservative Mental Health Treatment

The ALJ found that Childers only received conservative treatment, noting that there was no inpatient treatment or psychiatric hospitalization.  (AR 22.)  The fact that Childers had not been hospitalized suggests conservative treatment, but that fact alone is insufficient.  *Matthews v. Astrue*, Cas No. EDCV 11-01075-JEM, 2012 U.S. Dist. LEXIS 47903, 2012 WL 1144423, at *9 (C.D. Cal. Apr. 4, 2012) (finding that claimant's care was not conservative because although claimant was not hospitalized, he received outpatient care and took psychotropic medication).  Additionally, the ALJ indicated that Childers' prescribed drug regimen was a "conservative" course of treatment.  (AR 22.)  The record reveals that Childers was prescribed Seroquel, Lithium, and Norco, among other medications.  (*See* AR 203, 216, 232, 265-68, 581-588.)  Childers' prescriptions were monitored and adjusted in conjunction with regular in-person appoints with Susan

1   Drymalski, M.D. and Natalia Baldo, M.D.. (*See, e.g.,* AR 350-354, 359-362, 373-377, 397-

2   399, 404-407, 419-427, 457-474, 493-501, 514-535.) This was not a conservative course

3   of treatment, and the ALJ erred in concluding otherwise. Seroquel is a "strong" psychiatric

4   medication. *Dallas v. Colvin*, Cas No. CV-13-02044-PHX-JZB, 2015 U.S. Dist. LEXIS

5   27593, 2015 WL 1097309, at *6 (D. Ariz. Mar. 6, 2015). Numerous courts "specifically

6   have recognized that the prescription of . . . Seroquel connotes mental health treatment

7   which is not 'conservative,' within the meaning of social security jurisprudence." *Johnson*

8   *v. Colvin*, Case No. ED CV 13-1476-PA €, 2014 U.S. Dist. LEXIS 80159, 2014 WL

9   2586886, at *5 (C.D. Cal. Mar. 18, 2014), *adopted*, 2014 U.S. Dist. LEXIS 80170, 2014

10  WL 2589777 (C.D. Cal. June 7, 2014); *accord Quiroz v. Berryhill*, 2018 U.S. Dist. LEXIS

11  25298, 2018 WL 922130, at *7 (C.D. Cal. Feb. 14, 2018) ("it is entirely unclear to the court

12  how treatment with such medications [as Seroquel] could be characterized as

13  conservative").

14      As with Seroquel, some of the other prescriptions of record connote aggressive

15  treatment. For example, Lithium is a "powerful" medicine. *Carden v. Colvin*, Case No.

16  2:13-3856-E, 2014 U.S. Dist. LEXIS 27725, 2014 WL 839111, at *5 (C.D. Cal. Mar. 4,

17  2014). Ample case law exists within the Ninth Circuit concluding that an ALJ errs by

18  describing as conservative the prescription of such drugs as Lithium. *See, e.g.,* 2014 U.S.

19  Dist. LEXIS 27725, [WL] at *3 (collecting cases and holding that prescriptions of, *inter alia*,

20  Lithium and Seroquel was not "conservative" within the mean of social security

21  jurisprudence); *Sandberg v. Comm'r of the SSA*, Case No. 3:14-cv-00810-ST, 2015 U.S.

22  Dist. LEXIS 67103, 2015 WL 2449745, at *6 (D. Or. May 22, 2015) ("Prescription medicine

23  such as Lithium is certainly not conservative"); *Johnson*, 2014 U.S. Dist. LEXIS 80159,

24  2014 WL 2586886, at *5 (prescription of Seroquel "connotes mental health treatment

25  which is not 'conservative'").

26      Courts have concluded that it is error to describe as conservative a course of

27  treatment including psychiatric drugs like those in the record here, in instances in which

28  there is no history of hospitalization. *See Scarborough v. Berryhill*, 2017 U.S. Dist. LEXIS

32716, 2017 WL 896283, at *5 (E.D. Cal. Mar. 7, 2017).  The ALJ's conclusion that Childers was subject only to conservative mental health treatment lacks substantial evidence.  The error was not harmless.  *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (harmless error doctrine applies in social security context when the reviewing court can "confidently conclude" that the error was "inconsequential to the ultimate nondisability determination").

    3.    Conservative Treatment for Back Pain

    Childers' treatment for back pain was not conservative in nature.  Childers was taking narcotics, as opposed to over-the-counter medication, was prescribed a cane and physical therapy, and he received steroid lumbar injections in 2016 and 2017 for his pain.  (AR 265-268, 450-453, 538-42, 549-553, 563, 566-567, 584-588.)  Childers testified that he still experiences constant pain, with the pain shooting down his left leg, and that he is prone to falling as a result.  (AR 42-43.)  The steroid injections, in and of themselves, may render the treatment not conservative as the Ninth Circuit has noted, "we doubt that [sic] steroid shots the neck and lower back qualify as 'conservative treatment.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014).  Many courts consider the use of narcotics and injections for pain management not conservative in nature.  *Lapierre-Gutt*, 382 Fed. Appx. At 664 (treatment consisting of narcotics, occipital nerve blocks, and trigger point injections not conservative); *Oldham v. Astrue*, No. CV 09-1431-JEM, 2010 U.S. Dist. LEXIS 72353, 2010 WL 2850770, at *9 (C.D. Cal. July 19, 2010) (finding "several instances of lumbar epidural steroid injections, . . . the length of the record over time, the intensity of certain procedures, and the evidence of numerous medications that Plaintiff took to alleviate pain render any argument Plaintiff's treatment was 'conservative' unconvincing"); *Soltero de Rodriguez v. Colvin*, 2015 U.S. Dist. LEXIS 125158, 2015 WL 5545038, at *4 (C.D. Cal. Sept. 18, 2015) (claimant's pain management plan consisting of narcotics and narcotic-like medications in addition to epidural steroid injections was mot conservative).  *But see Torres v. Colvin*, No 2:13-cv-0082-GMN-PAL, 2014 U.S. Dist. LEXIS 141792, 2014 WL 4977321, at *17 (D. Nev. Oct. 6, 2014) (rejecting argument that

alleged receipt of steroid injection, alone, overcame ALJ's characterization of treatment as conservative). Regardless, Childers' combination of treatments does not support the ALJ's conclusion that Childers' treatment was conservative. Thus, the ALJ's articulated reason does not meet the "clear and convincing" standard.

The ALJ's conclusion that Childers was subject only to conservative physical health treatment lacks substantial evidence. The error was not harmless. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (harmless error doctrine applies in social security context when the reviewing court can "confidently conclude" that the error was "inconsequential to the ultimate nondisability determination").

4.    Improvement and Medical Evidence

The second and third reasons mentioned by the ALJ are that Childers' symptoms improved with medication and prescribed treatment and that the medical records do not support the degree of severity. (AR 22.) An impairment that can be effectively controlled with treatment is not disabling. *Warre v. Comm'r, Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Further, while subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effect. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2). In finding four, the ALJ cited a number of medical records supporting the conclusion that Childers' mental and physical health improved with the prescribed treatment and Childers is not as disabled as alleged. (AR 22.) This constitutes substantial evidence supporting clear and convincing reasons for the negative credibility finding.

Childers argues the ALJ misinterpreted the records. (ECF No. 12 at 14-17.) This argument has already been addressed by the Court in section B. As noted above, the ALJ, not this Court, is responsible for reviewing the evidence and resolving conflicts or ambiguities. *Tommasetti*, 533 F.3d at 1041; *Magallanes*, 881 F.2d at 751. As a result, evidence of improvement with treatment and objective evidence reflecting a lesser degree of symptoms than alleged was properly considered by the ALJ and these are clear and

1    convincing reasons supported by substantial evidence for rejecting Childers' credibility.

2        D.    Conclusion

3        Although the ALJ provided specific, clear, and convincing reasons for rejecting

4    Childers' testimony based on improvement with the prescribed treatment, and the

5    objective medical evidence, the ALJ failed to do so when rejecting Childers' testimony

6    based on his conservative treatment.  Therefore, there is a lack of substantial evidence,

7    overall, supporting the ALJ's rejection of Childers' testimony.  *See Trevizo v. Berryhill*, 871

8    F.3d 664, 682 (9th Cir. 2017) (when "vast majority of ALJ's bases for rejecting [claimant's]

9    testimony were legally and factually erroneous," remaining reason did "not constitute

10   substantial evidence supporting finding that [claimant's] symptoms were not as severe as

11   she testified").

12       The Court cannot find the above errors harmless because they make up a

13   substantial portion of the ALJ's credibility assessment.  *Carmickle*, 533 F.3d 1155 at 1162.

14   When "the ALJ fails to articulate an acceptable reason for either disbelieving [the

15   claimant's] testimony . . . [the] case must be remanded to the ALJ to make adequate

16   findings."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

17   **IV. Remand**

18       The Court recommends the matter be remanded to the agency for further

19   administrative proceedings.  "The rare circumstances that result in a direct award are not

20   present in this case."  *Leon v. Berryhill*, 874 F.3d 1130, 2017 WL 7051119, at *4 (9th Cir.

21   2017, amended Jan. 25, 2018).  "When the ALJ denies benefits and the court finds error,

22   the court ordinarily must remand to the agency for further proceedings before directing an

23   award of benefits."  *Id.* at *2 (citing *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d

24   1090, 1099 (9th Cir. 2014)).  The credit-as-true analysis "permits, but does not require, a

25   direct award of benefits on review but only where the [ALJ] has not provided sufficient

26   reasoning for rejecting testimony and there are no outstanding issues on which further

27   proceedings in the administrative court would be useful,"  *Leon*, 874 F.3d 1130, 2017 WL

28   7051119, at *1.  Under the three part rule, the Court first considers whether the "ALJ failed

1  to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or

2  medical opinion."  *Garrison*,759 F.3d at 1019.  This step is met for the reasons set forth

3  above.

4         However, at the second step, the Court considers whether there are "outstanding

5  issues that must be resolved before a disability determination can be made" and whether

6  further administrative proceedings would be helpful.  *Treichler*, 775 F.3d at 1101.  "In

7  evaluating this issue, [the Court] consider[s] whether the record as a whole is free from

8  conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether

9  the claimant's entitlement to benefits is clear under the applicable legal rules."  *Id.* at 1104-

10  1105.  "Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous,

11  the proper approach is to remand the case to the agency."  *Id.* at 1105.  When, as here,

12  the ALJ's findings regarding the claimant's subjective testimony are inadequate, remand

13  for further findings on credibility is appropriate.  *See Brynes v. Shalala*, 60 F.3d 639, 642

14  (9th Cir. 1995).  Therefore, the Court finds further administrative proceedings are

15  necessary and recommends the case be remanded.

16  **V.    CONCLUSION**

17         Having reviewed the Administrative Record as a whole, and weighing the evidence

18  that supports and detracts from the Commissioner's conclusion, the Court finds that the

19  ALJ's decision is not wholly supported by substantial evidence and recommends the case

20  be remanded.  The Court therefore recommends that Childers' motion for remand (ECF

21  No. 12) be granted, and that the Commissioner's cross-motion to affirm (ECF No. 19) be

22  denied.

23         1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may

24  file specific written objections to this Report and Recommendation within fourteen days of

25  receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and

26  Recommendation" and should be accompanied by points and authorities for consideration

27  by the District Court.

28

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**V.      RECOMMENDATION**

IT IS THEREFORE RECOMMENDED that Plaintiff's motion for remand (ECF No. 12) be **GRANTED** and Defendant's cross-motion to affirm (ECF No. 19) be **DENIED**, and that the case be **REMANDED** to the agency for further proceedings.

**DATED**: March 12, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**